The opinion of the court was delivered by
McEnery, J.
The plaintiff sues as natural tutrix of her minor ■child to recover damages for severe injuries inflicted upon him by one of defendant’s cars. The ease was submitted to the lower court, without intervention of a jury, and there was judgment for the defendant.
In the original petition the complaint is that the child, who was about four years of age, was knocked down and injured by one of defendant’s cars, while a passenger on the same. An amended petition was filed in which the cause of action was alleged as follows:
“That said child was a passenger in the car going in the direction •of Carrollton, and was removed from said car by its conductor and placed on the street before the person in charge of said child had alighted. That neither said child nor the person in charge of said child was notified that a car was coming at a rapid rate of speed from the other direction of the line of said railroad company, nor did the conductor of said car, upon which the said child was a passenger, notify said child or the person in charge of said child that said car was coming, and it was an act of negligence to place said child on the public street ahead of the person in charge of said child and that the want of notice constituted negligence.”
A young lady aged sixteen was in one of defendant’s cars, in charge ■of her brothers, both young children. The young lady notified the conductor to stop at Nashville avenue. As she had directed the car stopped in order that she and the children in her charge could get off. The four-year-old boy was put off by the conductor, the young lady saying, in her testimony, that she was on the steps when the child was placed on the ground. At this time one of defendant’s ■cars was going down town in an opposite direction from the car in which the young lady and the children were passengers. But the young lady and the children had safely been placed on the ground and were standing at the point where they had alighted, when the down-town car was approaching. The youngest child started for his home near by, and as he approached the track the motorman in the approaching car, who had previously shut off the power, and the •car was going by its own momentum, saw the child approaching the *868 track, and immediately applied the brakes. The front of the car passed the child and he ran into it somewhere between the front and rear trucks. It is important to determine whether the person in charge of the children had gotten off the car, and was waiting for the car to pass. There can be no doubt of defendant’s liability if the conductor deliberately placed a child of such tender years on the ground unprotected, in the presence of a passing car.
The young lady says: “I had'gotten off the car and started across when the accident happened.” She locates herself when the accident happened by saying she was “a few steps from the car that ran over him,” and was standing on the lake side of the up-town track. The car which she had left had moved off. The youngest-child started to cross the track while she was standing with the other child where she had left the car.
She did not see the child when he started toward the track.
This testimony is corroborated by witnssees for the defence.
In another part of her testimony the young lady says: The moment the little fellow was put out, he started diagonally across from the upper to the lower crossing and her brother started .to follow him, and she had got very near the track with the second brother when the accident happened.
T. Hochart, who saw the accident, says he was at the corner-of Nashville avenue and St. Charles, and he saw a young lady get out of the car with two children and another lady, and they were standing just where the car stopped, waiting for the ca.r coming-down to pass. “Then I saw a little boy turn loose and go over before the car had reached the corner. The gong was ringing, of course, and the boy struck the car right in the middle of the car and had his hand just cut here. ”
L. B. Turner, another witness, says he was in the car that injured the child and that there “ was a lady and a child or two of them. I noticed them on the other corner ahead. The child ran over toward the car we were in and immediately there was a scream, and I jumped out and ran and picked the child up, and I saw this-young lady, they told me was the sister of the child. ” He says that-the child ran into the midway of the car.
J. Milford says he was in the car which injured the child. “ After crossing the corner, the other car that those people had come out off had stopped, and this car I was in, the motorman of the car I was: *869 in, he got then within fifty or sixty feet of the crossing and had begun to sound his gong. When the car I was in got very near to the corner where the people were standing this lady — there was two women and two little boys * * * was standing at the corner and the car began to start out, and the girl had this other child by the hand, and just as the car was in the crossing the boy breaks and runs diagonally across, and the car strikes the child in the head and knocks it down, and the car ran then about twenty feet and it stopped. ” He says the child ran into the car “ just where the front wheels had passed.”
G. W. Sievers says he was in the car with the young lady and the children. He was on the rear platform and saw the child run into the car, striking against the bolt on the side of the car behind the front wheels.
O. T. Dreux, who was motorman on Oar 63, against which the child ran, says: “Whenlgot to Eleanore street, that is a half a square above Nashville avenue, I noticed Oar 34 stop at the corner, putting some passengers out. The rule of the company is, when you see a car stop to put out passengers to ring the gong, and I shut my power •off and let my car roll, and commenced ringing my gong and kept ringing until I got even with the car that stopped, and I noticed this little child running toward my ear, and I started to put my brake on as fast as I could, and I could see the child running to the car after the car had passed him, and I stopped the car about seven or eight feet below the lower crossing, and I ran back because I heard this lady screaming, and when I got there Mr. Trepagnier already had run back and picked the child up.” He says he could see the child running and that he was likely to run into the car, and that he applied the brakes and stopped the car as quick as he could.
Owen McMahon, who was the conductor on the car in which the young lady and children were passengers, says he got down from the ■platform, assisted the youngest child out, then the other, and finally the young lady, and then started on his way with the car. He had .gone about ten feet when he saw the child start toward the track; stopped his car and endeavored to reach the child to save it. He says the child ran into the car about midway. He also says he cautioned the young lady that a car was approaching, but she denies this. But if the conductor could see the car, she also could see it. The preponderance of testimony is, that she was standing where *870 she had alighted, when the car was approaching. The young lady was old enough to appreciate impending danger. She had been trusted with the care of the children. We do not find any negligence on the part of the defendant. The question presented is one of fact, whether the conductor had negligently placed the child of such tender years unprotected on the track in the presence of approaching danger. Prom the evidence we conclude that the finding of the trial judge was correct.
Judgment affirmed.